UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
COLLEGE ESSAY OPTIMIZER, LLC d/b/a
COLLEGE ESSAY ORGANIZER,

                            Plaintiff,

                -against-                                 14-cv-8586 (LAK)

EDSWELL, INC., et ano.,

                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

> Christopher R. Kincade
> Daniel A. Schnapp
> Gerard P. Norton
> FOX ROTHSCHILD LLP
> *Attorneys for Plaintiff*

> Russell D. Morris
> THE LAW OFFICES OF RUSSELL D. MORRIS PLLC
> *Attorney for Defendants*

LEWIS A. KAPLAN, *District Judge.*

        This is an action for trademark infringement, false advertising, and on other theories brought by the operator of a web site that assists college applicants with the college essay process. The matter is before the Court on defendants' motion to dismiss for lack of personal jurisdiction or, alternatively, to dismiss some of plaintiff's claims for failure to state a claim upon which relief may be granted.

*Facts*

I.       *Parties, Causes of Action, and Posture*

      The plaintiff in this case, College Essay Optimizer, LLC ("CEO"), operates a website that assists college applicants with the college essay process by, among other things, aggregating college essay requirements for different schools.[1]  It owns the federally registered trademark ESSAY ROADMAP for "college admission essay preparation and filing."[2]

      The two defendants are (1) Edswell, Inc. ("Edswell"), a small startup California corporation that operates a college planning website that competes with CEO's essay preparation services, and (2) Alex Thaler, Edswell's founder and chief executive officer.[3]  Edswell has two employees (including Thaler), operates out of California, and has no address or property in New York.[4]  Thaler is a California resident with no address or property in New York.  He has been to New York only three times in his life, never on business, and most recently in 2010.[5]

      On September 2, 2014, Edswell launched its website, edswell.com.[6]  The website allegedly used the designation "EssayMap" in connection with its college essay preparation services

---

[1]      Cpt ¶ 13 [DI 1].

[2]      *Id.* ¶ 14, Ex. 1.

[3]      *Id.* ¶¶ 11-12, 26.

[4]      Thaler Decl. ¶¶ 6-7 [DI 8].

[5]      *Id.* ¶¶ 2-3.

[6]      *Id.* ¶ 8.

that compete with CEO's.[7]  At launch, the website depicted also a chart comparing its services to CEO's.[8]  Notably, although Edswell's website originally requested that users provide credit card information, that requirement was removed two days after launch, and the website remains free today.[9]  Only one user ever was charged for Edswell's services: a California resident who paid $18.00.[10]

The same day the Edswell website was launched, CEO's president emailed Thaler, expressed concerns with Edswell's website, and threatened legal action.[11]  The parties exchanged correspondence for approximately one month, and then did not communicate again until CEO filed the complaint in this action on October 28, 2014.[12]  The complaint alleges, among other things, that defendants' use of the term "EssayMap" on edswell.com infringes on CEO's ESSAY ROADMAP trademark, in violation of the Lanham Act,[13] and that defendants' website contains false and misleading statements about CEO's services, constituting false advertising and unfair competition under the Lanham Act.[14]  CEO asserts also several causes of action under state law based on the

---

[7]    DI 1 ¶¶ 27-31.

[8]    *Id.* ¶ 35.

[9]    DI 8 ¶¶ 9-10.

[10]    *Id.* ¶ 10.

[11]    DI 1 Ex. 19 at 2.

[12]    *See id.* Exs. 19-21.

[13]    *Id.* ¶¶ 26-31; 84-88 (Count II); 15 U.S.C. § 1114.

[14]    DI 1 ¶¶ 32-47; 73-83 (Count I); 15 U.S.C. § 1125(a).

4

same alleged conduct.[15]  (Count V (breach of contract under New Jersey law) is based also on allegations that Thaler created user accounts on CEO's website, governed by CEO's "Terms of Use," and then breached those agreements by using his account for commercial purposes.)[16]

Defendants move to dismiss the complaint for lack of personal jurisdiction under Rule 12(b)(2) or, alternatively, to dismiss the state law claims (Counts III-VI) for failure to state a claim.[17]

## II. Personal Jurisdiction Allegations

### A.    The Complaint

The complaint is light on personal jurisdictional allegations.

Concerning Edswell, plaintiff alleges only that Edswell "has in the past conducted, and is currently conducting, business in this District by marketing, promoting, advertising, offering for sale, and distributing services to consumers in this District."[18]

Concerning Thaler, plaintiff alleges that Thaler "has in the past conducted, and may be currently conducting, personal consulting and educational support services in this District, in the past has worked for Stacy Blackman Consulting, which claims to work with clients in this District,

---

[15]
    DI 1 ¶¶ 89-111.

[16]
    CEO secured an *ex parte* order to show cause why a preliminary injunction should not issue on October 28, 2014, setting a hearing for the following week.  DI 4.  The parties stipulated to a preliminary injunction on November 3, 2014, which remains in effect.  DI 6.

[17]
    DI 7.

[18]
    DI 1 ¶ 8.

and is currently marketing, promoting, advertising, offering for sale, and distributing his college essay-related book in this District."[19]

### B.      Allegations Outside The Complaint

In addition to allegations in a complaint, a court may consider additional facts averred through "affidavits and supporting materials" submitted by a plaintiff opposing a Rule 12(b)(2) motion.[20]   Here, plaintiff makes the following additional assertions in its opposition brief and a declaration.

### 1.      Edswell

Plaintiff argues that Edswell is subject to jurisdiction in New York because (1) a YouTube advertisement, linked to Edswell's website, displays the names of four New York colleges during the advertisement's 2:06 duration,[21] (2) users of Edswell's website are governed by its "Terms of Service," which plaintiff calls a "contract,"[22] (3) Edswell is promoted on Independent Educational Consultants Association's ("IECA's") website, an organization that "includes many

---

[19]

   Id. ¶ 9.

[20]

   See Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001).

[21]

   Mem. of Law in Opposition to Mot. to Dismiss ("Opp.") at 4; Stern Decl. [DI 17] ¶ 2 & Ex. 1.  Plaintiff further alleges that three of these colleges have predominantly in-state students. Id. ¶3 & Ex. 2.

[22]

   Opp. at 4-5; DI 17 ¶ 4 & Ex. 3.

New York members,"[23] (4) Edswell "presum[ably]" has entered into "business transactions with New Yorkers,"[24] (5) Edswell's services are "intensely interactive,"[25] and (6) Thaler, "on behalf of Edswell," allegedly created user accounts with CEO,[26] which plaintiff describes as a "New York corporation."[27]

### 2.   Thaler

In its opposition brief, plaintiff abandons the jurisdictional allegations it asserted against Thaler in its complaint.  It argues instead that he is subject to this Court's jurisdiction to the same extent as Edswell because Thaler acted as Edswell's "agent," or alternatively, its "alter ego."[28] Plaintiff further emphasizes that Thaler created user accounts on CEO's website under false pretenses in violation of the user agreement, and then stole CEO's trademark and platform for use on Edswell's website.[29]  CEO seems to contend that this allegedly tortious conduct took place, and constituted transaction of business, in New York because, according to its complaint, CEO's "main

---

[23]

Opp. at 5; *see also* DI 17 ¶ 5 & Ex. 4.

[24]

Opp. at 10.  Plaintiff notes the defendants "have conveniently failed to provide a list of 'customers' from New York."  *Id.*

[25]

*Id.* at 5.

[26]

*Id.* at 2.

[27]

*Id.* at 11; *see* DI 1 ¶ 10 (stating that CEO is a New Jersey LLC with a "main business address" in Manhattan).

[28]

Opp. at 12-13.

[29]

*Id.* at 9.

business address" is in New York.[30]

*Discussion*

*The Standard on a Rule 12(b)(2) Motion*

When faced with a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2),

"'[t]he plaintiff bears the burden of establishing personal jurisdiction over the defendant.'"[31]  Parties

may submit affidavits and other documents in connection with such a motion, and the court may

consider those documents "without converting the motion into one for summary judgment."[32]  The

court must construe all pleadings and affidavits in the light most favorable to the plaintiff,[33] to the

extent they are "'uncontroverted by the defendant's affidavits.'"[34]  Further, "when a motion to

dismiss for lack of [personal] jurisdiction is decided on the basis of affidavits and other written

materials, the plaintiff need only make a prima facie showing."[35]  "'Such a showing entails making

legally sufficient allegations of jurisdiction, including an averment of facts that, if credited, would

---

[30]

DI 1 ¶ 10.

[31]

*MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (quoting *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993)).

[32]

*Weiss v. Barc, Inc.*, 2013 WL 2355509, at *1 (S.D.N.Y. May 29, 2013) (quotation marks omitted).

[33]

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 163 F.2d 55, 57 (2d Cir. 1985).

[34]

*MacDermid*, 702 F.3d at 727 (quoting *Seetransport*, 989 F.2d at 580).

[35]

*MacDermid*, 702 F.3d at 727 (quoting *Seetransport*, 989 F.2d at 580); *accord Metromedia Co. v. Cowan*, 2013 WL 5827702, at *3 (S.D.N.Y. Oct. 30, 2013).

8

suffice to establish jurisdiction over the defendant.'"[36] The *prima facie* showing cannot be based on

conclusory statements or allegations and must be "'factually supported.'"[37]

*Applying New York's Long-Arm Statute to Defendants*

In litigation arising under a federal statute that does not contain its own jurisdictional

provision, like the Lanham Act, a federal court sitting in New York has personal jurisdiction over

a defendant if (1) New York law confers jurisdiction over that defendant, and (2) the assertion of

personal jurisdiction under New York law would comport with due process.[38]  Plaintiff here alleges

that this Court has personal jurisdiction over both defendants under New York's long-arm statute,

which provides for jurisdiction over any non-domiciliary who:[39]

> 1.        transacts any business within the state or contracts anywhere to supply goods
> or services in the state; or
>
> 2.        commits a tortious act within the state, except as to a cause of action for
> defamation of character arising from the act; or

---

[36]
  *Metromedia Co.*, 2013 WL 5827702, at *3 (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010)).

[37]
  *Yellow Pages Solutions, Inc. v. Bell Atlantic Yellow Pages Co.*, 2001 WL 1468168, at *3 (S.D.N.Y. Nov. 19, 2001) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).

[38]
  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 244 (2d Cir. 2007).

[39]
  N.Y. CPLR § 302(a).

3.     commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(I) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state.

Plaintiff here alleges jurisdiction under subdivisions 1, 2, and 3 of CPLR § 302(a).

*CPLR § 302(a), subd. 1*

"To determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant transacts any business in New York and, if so, (2) whether this cause of action arises from such a business transaction.  Courts look to the totality of the defendant's activities within the forum to determine whether a defendant has transacted business in such a way that it constitutes purposeful activity satisfying the first part of the test."[40]  Such purposeful activity – "the overriding criterion necessary to establish personal jurisdiction pursuant to C.P.L.R. section 302(a)(1)" – must be a "volitional act[]" directed toward New York state, "thus invoking the benefits and protections of its laws."[41]

---

[40]     *Best Van Lines*, 490 F.3d at 246 (quotation marks, citations, and alterations omitted).

[41]     *Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 418 (S.D.N.Y. 2009) (quotation marks omitted).

When personal jurisdiction is alleged primarily in connection with an out-of-state defendant's website, New York courts employ a "spectrum of interactivity" analysis.[42]  A "passive website" that simply allows users to view information is insufficient to confer jurisdiction over a non-domiciliary defendant.[43]  At the other end of the spectrum, a "fully 'interactive'" website that sells goods and services through its website, or charges membership fees to registered users, can subject a foreign defendant to personal jurisdiction in New York.[44]  When a website falls in the middle ground, a court must evaluate the website's level of contact and interactivity with New York residents.[45]  It must consider also the degree to which the defendant's website specifically targets New York; in order to confer personal jurisdiction, the web activity directed at New York must be "volitional [or] distinguishable from [defendant's] interaction with users located in any other jurisdiction."[46]

Despite the fact-intensive nature of this analysis (and occasional inconsistency in the case law), a survey of cases considering middle-of-the road websites is instructive as to both the (1) level of contact and interactivity with New York residents and (2) volitional activity directed at New York necessary to confer jurisdiction under New York's long-arm statute.

---

[42]

Weiss v. Barc, Inc., 2013 WL 2355509, at *4 (S.D.N.Y. May 29, 2013) (quoting Royalty Network, 638 F. Supp.2d at 419).

[43]

Id.

[44]

Royalty Network, 638 F. Supp. 2d at 419.

[45]

Id.

[46]

Id. at 420 (citing Capitol Records, LLC v. VideoEgg, Inc., 611 F. Supp. 2d 349, 359 (S.D.N.Y. 2009)) (second alteration in original).

### 1. Contact and Interactivity with New York Residents

A website that merely has non-paying registered users located in New York is generally insufficient to establish jurisdiction under § 302(a)(1). In *Realuyo v. Villa Abrille*, for example, "the existence of 332 non-paying e-mail registrants" from New York on defendant's website was insufficient to justify assertion of personal jurisdiction over a defendant whose website featured an allegedly defamatory article.[47] Similarly, the fact that "some New York residents ha[d] registered" with defendant's social media website in *Barc*, which allegedly displayed content infringing on plaintiff's trademark, did not "rise to the level of alleging that Barc has purposefully and knowingly entered into or sought transactions with New York residents."[48]

Further, plaintiffs must allege interactive contact with a website specifically *by New Yorkers* in order to survive a motion to dismiss. In *Royalty Network*, the defendants' website – which allegedly provided visitors with unauthorized access to music owned by plaintiff – was insufficiently connected to New York to confer personal jurisdiction because plaintiff "provides no evidence that any New York resident actually engaged in any [relevant] transactions."[49] The court rejected as "simply insufficient" plaintiff's argument that "the website purposefully targets the Indian population, that a significant percentage of the Indian population within the United States resides in New York, and therefore, that New York residents *must* have used the website."[50] The

---

[47]

2003 WL 21537754, at *6-7 (S.D.N.Y. July 8, 2003).

[48]

2013 WL 2355509, at *4.

[49]

638 F. Supp. 2d at 420.

[50]

*Id.* (emphasis in original).

district court rejected a similar argument in *ISI Brands, Inc. v. KCC International, Inc.*, declining to exercise jurisdiction over – or even order jurisdictional discovery of – a defendant who sold products "through an interactive website" when plaintiff alleged merely that "it seems probable that . . . orders were also shipped into the Eastern District of New York."[51]   And the district court in *Capitol Records , L.L.C. v. SeeqPod, Inc.* found that "[p]laintiffs' effort to proffer a prima facie case fails because they have alleged no facts demonstrating interactive conduct with the website *by New Yorkers*, much less the requisite purposeful transactional activity directed to New York."[52]

New York courts that have exercised personal jurisdiction over defendants with interactive websites generally have done so based on proof of direct sales in New York, or direct solicitation of business in New York.   In fact, all but one of the cases upon which plaintiff relies found that defendant had sold products to New York residents.[53]   The other case plaintiff relies on, *Citigroup Inc. v. City Holding Co.*, found there was personal jurisdiction over a West Virginia defendant that operated an interactive mortgage-origination website where the defendant also directly solicited New York clients through the mail and hired New York companies to record mortgages on New York real estate.[54]

---

[51]
    458 F. Supp. 2d 81, 87-88 (E.D.N.Y. 2006) (quotation marks omitted).

[52]
    2010 WL 481228, at *4 (S.D.N.Y. Feb. 1, 2010) (emphasis added).

[53]
    Defendants' Reply Br. at 3 & n.1 [DI 20] (distinguishing 7 cases on this ground).

[54]
    97 F. Supp. 2d 549, 565-66 (S.D.N.Y. 2000).

2.      *Volitional Activity Directed at New York*

A website "directed at the entire United States" does not transact business in New York where the operator has "manifested no intent specifically to target New York . . . or to avail [itself] of the particular benefits of New York law."[55]  Further, "the mere solicitation of business within the state does not constitute the transaction of business within the state absent some other New York-directed activities."[56]  Thus, a court in this district determined it had personal jurisdiction over a defendant corporation, Dirtcheapcigs.com, and two of its officers when the officers "directed" the corporation to sell cigarettes to New York City residents through its website and "to conceal those sales from New York state tax authorities."[57]  By contrast, there was no personal jurisdiction over a defendant that sold products nationally through an interactive website in *ISI Brands* where the plaintiff "does not claim that the Defendant purposefully solicits New York customers; makes mailings to New York residents; enters contracts in New York; or that its website is in any way targeted towards New York."[58]  Courts in this district declined to exercise personal jurisdiction for similar reasons over defendants who operated interactive websites in *Royalty Network*[59] and *Capitol*

---

[55]
    *Girl Scouts of U.S. v. Steir*, 102 F. App'x 217, 219 (2d Cir. 2004) (summary order).

[56]
    *Id.* (quotation marks omitted).

[57]
    *City of N.Y. v. Cyco.Net, Inc.*, 383 F. Supp. 2d 526, 542 (S.D.N.Y. 2005).

[58]
    458 F. Supp. 2d at 87.

[59]
    638 F. Supp. 2d at 420 ("there is nothing in this record to support a finding that defendants purposefully transacted business via their website with New York visitors").

*Records.*[60]

### 3.    CPLR § 302(a), subd. 1 - Analysis

Plaintiff has not made a *prima facie* showing of personal jurisdiction over either defendant under CPLR § 302(a)(1).

#### Edswell

The single paragraph in the complaint relating to jurisdiction over Edswell is purely conclusory and thus insufficient to plead a *prima facie* case.  Plaintiff's additional arguments and supporting documentation *de hors* the complaint fail also to allege that Edswell (1) engaged in interactive contact with New York residents, or (2) specifically targeted its services to New Yorkers, both of which are necessary to make a *prima facie* showing of personal jurisdiction.

First, CEO argues that Edswell has "presumed business transactions" with some "unknown number" of New Yorkers.[61]  But CEO never alleges specific facts showing that any New York resident has used Edswell's services.  And a plaintiff asserting that a New York court has personal jurisdiction over a defendant must allege specifically that New York residents actually used defendant's website; simply alleging the probability that some New Yorkers used an interactive website is insufficient.  Plaintiff contends that "[i]t is immaterial whom Defendants have actually

---

[60]    2010 WL 481228, at *4 ("Plaintiffs' effort to proffer a prima facie case fails because they have alleged no facts demonstrating interactive conduct with the website by New Yorkers, *much less the requisite purposeful transactional activity directed to New York*.") (emphasis added).

[61]    Opp. at 11-13.

sold services to; what is relevant is whether Defendants have offered services (for pay or for free) in commerce."[62]   But that is not the law.   The inquiry is not whether defendants have offered services in commerce; indeed, courts in this circuit have declined to exercise jurisdiction over defendants who sold products through their websites.[63]   The correct inquiry is whether defendant's services were targeted at New York residents, and whether New York residents used those services. Here, those allegations are lacking.

Second, CEO argues that users of Edswell's website are governed by its "Terms of Service," which plaintiff contends is a contract.   But plaintiff never actually alleges that these terms must be agreed to by an Edswell user, *i.e.*, that a customer must affirmatively accept the terms of service in order to use the website.   In any event, the cases demonstrate that a defendant operating a website that has non-paying registered users in New York generally is not subject to long-arm jurisdiction.   And Edswell has demonstrated that it had only one paying user before it decided to extend its free service indefinitely, and that user is a California resident.[64]

Third, plaintiff alleges repeatedly that Edswell's services are "intensely interactive" and therefore that it is subject to jurisdiction in this (and, presumably, any) state.   But more than a showing of interactivity is necessary to exercise jurisdiction over a party operating a website.   Such allegations must be accompanied by evidence of the defendant's direct sales to or solicitation of business from New York.   Here, Edswell has not sold its services to a New York resident, and

---

[62]   *Id.* at 10.

[63]   *E.g.*, *ISI Brands*, 458 F. Supp. 2d at 87.

[64]   DI 8 ¶¶ 9-10.   The one paying user was charged a total of $18.00.

16

plaintiff has not alleged adequately that Edswell solicited (even unpaid) business within the state.[65]

Finally, CEO alleges that Edswell actively promotes its services in New York by virtue of (1) a YouTube advertisement on its website that displays the names of four New York colleges during its 2:06 run time, and (2) its promotion on the IECA's website, an organization that allegedly "includes many New York members."

As a threshold point, these arguments go toward whether Edswell has targeted specifically New York with its services.  As explained above, CEO has not alleged adequately that Edswell engaged in interactive contact with New Yorkers.

CEO's allegations regarding Edswell's alleged marketing toward New Yorkers stretch the concept too thin.  The referenced YouTube video–which had 614 views as of September 28, 2015 – is essentially a 2-minute infomercial that highlights some of Edswell's features.  The video features a student using the website to work on her college essays, and for part of the video she is working on an essay for a New York University ("NYU") application.  But the fact that the clip relates in part to an NYU application does not carry the day for CEO.

First, the NYU reference in the video is brief – the university name and crest are displayed a few times for only a matter of seconds.  And the three other New York colleges that plaintiff references in its brief have their names displayed in the video for approximately three seconds.

---

[65]   Plaintiff's allegations regarding Thaler's alleged accounts with CEO are unavailing because plaintiff's claims do not arise from those actions as required by CPLR § 302(a).  Moreover, it is unclear whether that alleged conduct relates to New York.  There is no suggestion that CEO maintains or operates its website out of New York.  Indeed, CEO's website's Terms of Use are governed by New Jersey law.  DI 1 Ex. 16 at 3.  It is not even clear that CEO – a New Jersey LLC – has any presence in this state.  *See* Morris Decl. [DI 21] Exs. A & B.

Second, plaintiff does not allege, and there is no evidence, that this video (or any of Edswell's marketing materials) are promoted or distributed more in New York than elsewhere or that Edswell intended this NYU reference to boost its usership in New York.  A potential Edswell (non-paying) customer would have to be watching this video in the first place to notice the NYU reference.   In this way, Edswell's interaction with New York through its website is not "distinguishable from [its] interaction with users located in any other jurisdiction."[66]  And while the reference to NYU perhaps could steer a viewer toward applying to NYU, that does not mean the video is targeted to New Yorkers.  Indeed, most of the students who apply to and attend NYU are not New Yorkers.  According to plaintiff's own allegations, fewer than 25 percent of NYU's undergraduate students are in-state students (along with an unknown number of its 22,000 graduate students).[67]  Ultimately, Edswell's passing reference on a single, rarely-viewed YouTube video to a university attended predominantly by non-New Yorkers does sufficiently "manifest[]" its "intent specifically to target New York" for the purposes of long-arm jurisdiction.[68]

Plaintiff's allegations about Edswell's advertisement on the IECA website fail simply because "advertisements in national publications are not sufficient to provide personal jurisdiction under Section 302(a)(1)."[69]

---

[66]

Royalty Network, 638 F. Supp. 2d at 420-21 (quoting Capitol Records, 611 F. Supp. 2d at 359).

[67]

Opp. at 4; DI 17 Ex. 2.

[68]

See Steir, 102 F. App'x at 219.

[69]

Hearst Corp. v. Goldberger, 1997 WL 97097, at *10 (S.D.N.Y. Feb 26, 1997) (collecting cases); see Epstein v. Univ. of the South Pacific, 2015 WL 4002344, at *4 (S.D.N.Y. June 19, 2015) (applying this rule to an advertisement on a website).

Accordingly, CEO has failed to make a *prima facie* showing of personal jurisdiction against Edswell under CPLR § 302(a)(1).

### Thaler

CEO abandons (or, at least, does not pursue) the complaint's jurisdictional allegations with respect to Thaler. It raises instead two (possibly three) new arguments, none of which is supported by any allegation in the complaint or evidence submitted with plaintiff's motion. Each new argument fails as a matter of law.

*First*, plaintiff asserts that Edswell and Thaler each act as agent of the other and that actions of each should be imputed to the other. Since the jurisdictional allegations are insufficient as to each, this contention – even if it made more sense than seems apparent – would not avail CEO.

*Second*, plaintiff asserts that Edswell's contacts with New York should be imputed to Thaler under an alter-ego theory under California law. Again, this argument fails because Edswell is not subject to jurisdiction here. In any event, CEO neither alleges in its complaint nor proffers any evidence that Edswell is undercapitalized or has disregarded the corporate form. Plaintiff argues nonetheless that it would be inequitable to allow this suit to go forward against only Edswell because "Thaler would get off scot-free."[70] A federal district court in California rejected a similar argument in *NuCal Foods, Inc. v. Quality Egg LLC*, explaining that "[t]his conclusory allegation . . . is insufficient to demonstrate the kind of fraud or injustice necessary to invoke the extraordinary remedy of asserting personal jurisdiction via the alter ego theory and ignoring the

---

[70] Opp. at 13.

general presumption in favor of respecting the corporate form."[71]

   *Third*, plaintiff appears to argue (although it is unclear) that Thaler's alleged breach of CEO's Terms of Use subject him to jurisdiction in this state.  That argument fails against Thaler for the same reasons it fails against Edswell.

   Accordingly, CEO has failed to make a *prima facie* showing of jurisdiction against Thaler under CPLR Section 302(a), subd. 1.

   *CPLR § 302(a), subd. 2*

   CEO argues that this Court has personal jurisdiction over defendants pursuant to CPLR § 302(a), subd. 2, which confers jurisdiction over a defendant "who commits a tortious act within the state."[72]  It contends that defendants' website displays "the allegedly infringing EssayMap trademark," and that the site "intentionally targeted New York residents."[73]  But "when web sites display infringing trademarks, the tort is committed where the web site is created or maintained."[74]  Here, edswell.com was created and is maintained in California.[75]  Thus, this provision of the long-arm statute cannot confer jurisdiction over defendants.

---

[71]

   887 F. Supp. 2d 977, 993 (E.D. Cal. 2012) (quotation marks omitted).

[72]

   Opp. at 14-15 (quotation marks omitted).

[73]

   *Id.* at 15.

[74]

   *Barc*, 2013 WL 2355509, at *3 (citing *Citigroup*, 97 F. Supp.2d at 567); *see Capitol Records*, 2010 WL 481228, at *5 (holding that plaintiffs did not make a *prima facie* demonstration under CPLR § 302(a), subd. 2, when they did not allege that defendant's website "was created or maintained in New York").

[75]

   DI 8 ¶ 8.

*CPLR § 302(a), subd. 3*

CEO argues that this Court has jurisdiction pursuant to CPLR § 302(a)(3), which confers jurisdiction over a defendant who:

> commits a tortious act without the state causing injury to person or property within the state . . . if he (I) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

CEO's only explanation for its contention that this provision is applicable here is the assertion that defendants' conduct "has injured CEO in New York."[76] This conclusory statement notwithstanding, it does not appear that either prong of this subsection is sufficient to confer long-arm jurisdiction over defendants. Subsection (I) does not apply because (1) defendants do not regularly do or solicit business in New York for the reasons explained above, (2) plaintiff does not allege that defendants "engage[] in any other persistent course of conduct" in New York, and (3) defendants do not derive substantial revenue from goods used or services rendered in the state, because Edswell's total revenue to date is only $18.00.[77] And subsection (ii) does not apply for the same reason concerning Edswell's lack of "substantial revenue." Thus, this provision of the long-arm statute also cannot confer jurisdiction over defendants.

---

[76] Opp. at 15.

[77] DI 8 ¶ 10.

*Jurisdictional Discovery*

Against the possibility that the Court would find its jurisdictional showing deficient, CEO asks in the alternative for jurisdictional discovery.

Many district courts have required plaintiffs seeking jurisdictional discovery to establish first a *prima facie* case of personal jurisdiction over the defendant.[78]  The Second Circuit has held that this does not constitute an abuse of discretion.[79]  But the circuit has made clear also that district courts need not require a *prima facie* showing any time a party seeks jurisdictional discovery.[80]  Rather, the decision to grant jurisdictional discovery is left to the broad discretion of the district court; there is no "bright-line" rule.[81]

In my view, requiring a *prima facie* showing of jurisdiction before granting discovery on that issue would be unwarranted, as that is the same showing required to survive a motion to dismiss in the first place.  The better way to consider this issue is to ask whether plaintiff's complaint and affidavits suggest the existence of additional discoverable facts that could subject defendants to long-arm jurisdiction.  But, as Judge McMahon explained, "if plaintiff offers only speculations or hopes that further connections to the forum will come to light in discovery, the court

---

[78]

E.g., *Laydon v. Mizuho Bank, Ltd.*, 2015 WL 1515358, at *7 (S.D.N.Y. Mar. 31, 2015) ("District courts in this circuit routinely reject requests for jurisdictional discovery where a plaintiff's allegations are insufficient to make out a prima facie case of jurisdiction.") (quotation marks and alterations omitted); *Capitol Records*, 2010 WL 481228, at *6.

[79]

*Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 186 (2d Cir. 1998).

[80]

*Ehrenfeld v. Mahfouz*, 489 F.3d 542, 550 n.6 (2d Cir. 2007).

[81]

*Id.*; *Linde v. Arab Bank, PLC*, 262 F.R.D. 136, 145 (E.D.N.Y. 2009).

should dismiss the complaint without allowing discovery."[82]

For example, in *Royalty Network*, after holding that the plaintiff had failed to make a *prima facie* showing of jurisdiction under CPLR § 302(a), the court denied plaintiff's request for jurisdictional discovery because plaintiff did "not put forward any compelling reasons why discovery should be allowed, nor does it identify any particular facts it would seek to adduce through such discovery or suggest how discovery could aid in this Court's jurisdictional inquiry. And it is well settled that a plaintiff cannot put defendant through the costly process of discovery, even discovery limited to jurisdictional matters, simply because it thinks that it can probably show significant contact with the state of New York if discovery were to proceed."[83]

In this case, plaintiff clearly should not be permitted to take discovery regarding personal jurisdiction over Thaler.  Thaler has had  no meaningful business or personal presence in or contact with New York whatsoever, and plaintiff's allegations both within and without the complaint do not suggest any hidden facts that might change this analysis.

The question concerning Edswell is closer.  Ultimately, however, its request for jurisdictional discovery should be denied.  The question is whether plaintiff has pled enough to suggest that discovery could yield facts showing that Edswell *both* (1) engages in interactive business activity with New Yorkers, and (2) purposefully targets its business toward New Yorkers.

On the first point, Edswell has not alleged specific facts showing that any New Yorker actually uses Edswell's services.  The Court assumes, however, that there is some reasonable

---

[82]

    *NovelAire Techs., L.L.C. v. Munters AB*, 2013 WL 6182938, at *13 (S.D.N.Y Nov. 21, 2013) (alteration and quotation marks omitted).

[83]

    638 F. Supp. 2d at 425 (quotation marks omitted).

chance that discovery might remedy that failure.  Nonetheless, any New York users would be non-paying users, which cuts against a finding of specific jurisdiction under CPLR § 302(a), subd. 1.

To be sure, this is a "totality of the circumstances" analysis, and discovery conceivably could yield other facts that might make up for Edswell's lack of paid business transactions with New Yorkers.  For example, jurisdiction might be appropriate if (1) a substantial number of Edswell's clients are New Yorkers (there are currently no allegations from either party about the quantity or percentage of users from New York), (2) the website is particularly interactive (plaintiff calls the site "intensely interactive," but provides little detail about how users actually interact with the site), and (3) users do, in fact, affirmatively enter into a "Terms of Service" contract when they register with the website.  In the last analysis, however, this all is speculative.  For example, plaintiff presumably has looked already for examples of Edswell's advertising or marketing that could be construed as targeting New York.  The fact that none are before the Court suggests that it has come up empty-handed save for the very weak YouTube video.  Indeed, the fact that Edswell is a small start-up company that existed for less than two months when this lawsuit was filed strongly suggests that discovery would be an unproductive burden.[84]

In the last analysis, the Court concludes that plaintiff has not made a showing sufficient to warrant jurisdictional discovery.  Moreover, that is especially so in view of the fact that a jurisdictional dismissal would not be fatal to its claims.  It would simply require CEO, if it wishes to pursue the matter, to sue in California.

---

[84]     Plaintiff fails to identify also "any particular facts it would seek to adduce through [jurisdictional] discovery."  *See Royalty Network*, 638 F. Supp. 2d at 425; Opp. at 15-16.

*Conclusion*

> For the foregoing reasons, defendants' motion to dismiss the complaint is granted to the extent that the action is dismissed for lack of personal jurisdiction.  Insofar as their motion seeks other relief, it is denied on the ground that it is moot.

> SO ORDERED.

Dated:          September 30, 2015

Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)